UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 23-cv-20172-GAYLES/TORRES

**CERTAIN UNDERWRITERS SUBSCRIBING
TO A POLICY OF INSURANCE**, *as subrogee
Of* **Banks DIH Limited,**

      **Plaintiff, SA**

v.

**GUYANA NATIONAL INDUSTRIAL
COMPANY, INC., et al.,**

      **Defendants.**

_____/

**<u>ORDER</u>**

    **THIS CAUSE** comes before the Court on Defendants' Motion to Dismiss Complaint (the "Motion"). [ECF No. 29]. The Court has reviewed the Motion and the record and is otherwise fully advised. For the reasons set forth below, the Motion shall be granted.

**BACKGROUND**[1]

    In or around December of 2021, Defendants Laparkan Trading Limited ("LTL") and/or Laparkan Trading Limited Company ("LTLC") (collectively the "Carrier") issued Bills of Lading[2] for the ocean transport of several items (the "Cargo") from West Palm Beach, Florida to

---

[1] As the Court is proceeding on a motion to dismiss, it accepts the allegations in Plaintiff's Complaint as true. *See Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1369 (11th Cir. 1997) (per curiam). In addition, the Court considers the eight bills of lading attached to the Motion as they are referenced in the Complaint and central to Plaintiff's claims. *See Id.* ("[W]here the plaintiff refers to certain documents in the complaint and those documents are central to the plaintiff's claim, then the Court may consider the documents part of the pleadings for purposes of Rule 12(b)(6) dismissal[.]"); *see also Gill as Next Friend of K.C.R. v. Judd*, 941 F.3d 504, 511 (11th Cir. 2019) ("In deciding whether a complaint states a claim upon which relief may be granted, we normally consider all documents that are attached to the complaint or incorporated into it by reference.").

[2] "A bill of lading is, in the first instance and most simply, an acknowledgment by a carrier that it has received goods for shipment. Secondly, the bill is a contract of carriage. Thirdly, if the bill is negotiated ... it controls possession of the goods and is one of the indispensable documents in financing the movement of commodities and merchandise throughout the world." *Matter of Hapag-Lloyd Aktiengesellschaft*, 573 F. Supp. 3d 934, 948 n.4 (S.D.N.Y. 2021) (internal quotations omitted).

Georgetown, Guyana. [ECF No. 1 ¶ 17]. Banks DIH Ltd. ("DIH") was the consignee[3] of the Cargo. *Id.* ¶ 28. Once in Guyana, the Cargo was "delivered off-loaded" in good condition to Laparkan Bond, an in-terminal warehousing facility at Defendant Guyana National Industrial Company's ("Guyana National")[4] Port Facility. *Id.* ¶ 18. The Cargo was then stored in a warehouse in Laparkan Bond. *Id.* ¶ 19.

On July 16, 2022, there was a fire at Laparkan Bond which completely destroyed the Cargo.[5] As a result, DIH was unable to take delivery of the Cargo. On February 14, 2022, DIH presented its claim for the loss of the Cargo to its insurer, Plaintiff Certain Underwriters Subscribing to a Policy of Insurance ("Plaintiff"). *Id.* ¶¶ 6, 30.

On January 16, 2023, Plaintiff, as subrogee of DIH, filed this action alleging claims against Defendants Guyana National, Laparkan Holdings Limited, National Engineering Company, LTLC, Laparkan Trading Limited Company d/b/a Laparkan Shipping, LTL, and Laparkan Trading (Guyana) Limited Company (collectively "Defendants")[6] for Negligence (Counts I-VII), Breach of Contract and Statutory Duty Under the Pomerene Act § [81110][7] (Counts VIII-XIV), Breach of Bailment (Counts XV-XXI), and Breach of Contract and Statutory Duty Under Carriage of Goods By Sea Act, 46 U.S.C. § 30701 ("COGSA") (Counts XXII-XXVIII). [ECF No. 1]. Defendants now jointly move to dismiss the Complaint, alleging (1) Plaintiff fails to state a claim under COGSA or the Pomerene Act and, therefore, the Court lacks federal question jurisdiction; (2)

---

[3] "Consignee means the recipient of cargo from a shipper; the person to whom a transported commodity is to be delivered." Matter of Hapag-Lloyd Aktiengesellschaft, 573 F. Supp. 3d at 952 n.18 (quoting 46 C.F.R. § 520.2).

[4] Defendants Laparkan Holdings Limited and National Engineering Company own, respectively, 70% and 30% of Guyana National. [ECF No. 1 ¶ 19].

[5] Plaintiff alleges "upon information and belief" that the fire was caused by arson and that the chemicals were stored in the warehouse where the fire began. [ECF No. 1 ¶¶ 23, 26].

[6] Plaintiff alleges that it is "unsure of the identity of the proper Defendant or Defendants and include[s] all of the Laparkan entities in an abundance of caution to preserve the statute of limitations." [ECF No. 1 ¶ 16].

[7] In the Complaint, Plaintiff improperly cites to 46 U.S.C. § 80101, a statute that pertains to vessels stranded on a foreign coast, when referencing the Pomerene Act.

Plaintiff fails to state a claim for the common law claims for negligence and breach of bailment; and (3) the Court lacks personal jurisdiction over three of the five defendants. [ECF No. 29].[8]

## LEGAL STANDARD

To survive a motion to dismiss brought pursuant to Federal Rule of Civil Procedure 12(b)(6), a claim "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face,'" meaning that it must contain "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). While a court must accept well-pleaded factual allegations as true, "conclusory allegations . . . are not entitled to an assumption of truth—legal conclusions must be supported by factual allegations." *Randall v. Scott*, 610 F.3d 701, 709–10 (11th Cir. 2010). "[T]he pleadings are construed broadly," *Levine v. World Fin. Network Nat'l Bank*, 437 F.3d 1118, 1120 (11th Cir. 2006), and the allegations in the complaint are viewed in the light most favorable to the plaintiff. *Bishop v. Ross Earle & Bonan, P.A.*, 817 F.3d 1268, 1270 (11th Cir. 2016). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. Therefore, a complaint that merely presents "labels and conclusions or a formulaic recitation of the elements of a cause of action" will not survive dismissal. *Id.* (internal quotation omitted).

## DISCUSSION

As Plaintiff alleges that this Court has federal question jurisdiction over this action, [ECF No. 1 ¶ 2], the Court first addresses Plaintiff's federal claims.

---

[8] On April 17, 2023, Defendants first moved to dismiss the Complaint. [ECF No. 28]. That same day, Defendants filed the operative Motion to Dismiss, [ECF No. 29], and filed a Notice of Striking the first motion to dismiss, [ECF No. 30]. As a result, the Court only considers the arguments made in, and attachments to, the operative Motion to Dismiss.

I.  **Federal Claims**

  A.  **COGSA**

In Counts XXII through XXVIII, Plaintiff alleges that each Defendant was a "common carrier or transportation provider of cargo" that "breached its contract of carriage, including but not limited to its duty under COGSA," by failing to deliver the Cargo in good condition. [ECF No. 1 ¶¶ 172, 180, 188, 195, 202, 209, 216]. Essentially, Plaintiff contends because the Cargo was destroyed in the warehouse fire, Defendants failed to deliver it in good condition.

"COGSA regulates the carriage of goods by sea between U.S. and foreign ports." *Daewoo Int'l Corp. v. Sea-Land Orient Ltd.*, 196 F.3d 481, 484 (3d Cir. 1999). "By its terms, COGSA governs bills of lading for the carriage of goods 'from the time when the goods are loaded on to the time they are discharged from the ship.'" *Norfolk Southern Railway Co. v. Kirby*, 543 U.S. 14, 29 (2004) (quoting 46 U.S.C.App. § 1301(e)).[9] *See also Crowley Am. Transp., Inc. v. Richard Sewing Mach. Co.*, 172 F. 3d 781, 785 n.6 (11th Cir. 1999) ("[COGSA] governs a carrier's duty from the time of loading to the time of discharge . . . ."); *Underwriters at Interest under Bailee Ins. Policy No. 09RTAMIA1158 v. SeaTruck, Inc.*, 858 F. Supp. 2d 1334, 1337 (S.D. Fla. 2012) ("By default, COGSA applies only from the time cargo is loaded onto a carrier's vessel until it is discharged."). The statute does not define "discharged", but courts have held that "[g]oods are not 'discharged' from a vessel under COGSA until they are released from the ship at the final port of destination . . . ." *Schramm, Inc. v. Shipco Transport, Inc.*, 364 F.3d 560, 564 (4th Cir. 2004). However, "COGSA also gives the option of extending its rule by contract." *Norfolk Southern*, 543 U.S. at 29. *See also Underwriters at Interest*, 858 F. Supp. 2d at 1338 ("[T]he parties may agree

---

[9] "While previously appearing at 46 U.S.C. §§ 1300–1315, in 2006, COGSA was reorganized and restated to appear in a note to 46 U.S.C. § 30701." *Hapag-Lloyd Aktiengesellschaft v. Levy*, No. 2:20-cv-11155, 2021 WL 5630299 at *3 n.3 (D.N.J. Dec. 1, 2021).

in the bill of lading to extend the applicability of COGSA to the pre-loading and post-discharge period.").

Defendants argue that COGSA does not apply here because the loss of the Cargo did not occur until after the Cargo was discharged from the vessel. The Court agrees. Though Plaintiff argues in its response to the Motion that "there remains the possibility that COGSA, or certain of its limited terms, was extended by the parties to cover the cargo while in Defendants' custody at the warehouse where the fire occurred," the Complaint contains no allegations that the parties contracted, through the bills of lading, to extend COGSA beyond discharge from the vessel. Moreover, the bills of lading filed in support of Defendants' Motion do not contain language extending coverage.[10] Accordingly, Plaintiff fails to state a claim under COGSA.

The Court notes that even if the bills of lading had extended COGSA to cover the Cargo while stored in the warehouse, Plaintiff fails to allege with any particularity how each of the seven Defendants would be liable under the bills of lading which were, according to the Complaint, issued only by LTC or LTLC. As a result, Plaintiff fails to adequately allege its claims under COGSA.[11]

**B.     Pomerene Act**

In Counts VIII through XIV of the Complaint, each titled Breach of Contract and Statutory Duty Under the Pomerene Act, Plaintiff alleges that each Defendant breached its duty under "46

---

[10] Plaintiff argues that the back side of the bills of lading (and other documents) are not before the Court. However, Plaintiff is not arguing that the back side of the bills of lading—if there even is a back side—necessarily extend COGSA's coverage. Rather, Plaintiff contends that there might be other documents that extend coverage. But Plaintiff's speculation in response to a Moton to Dismiss cannot overcome insufficient allegations in a Complaint.

[11] The Court notes that if COGSA had applied, Plaintiff would not be permitted to proceed on its tort claims. *See Polo Ralph Lauren, L.P. v. Tropical Shipping & Const. Co.*, 215 F. 3d 1217, 1220 (11th Cir. 2000) ("We conclude that because COGSA applies in this case, it provides [the plaintiff's] exclusive remedy."); *Kelts v. King Ocean Services, Ltd.*, No. 22-22299, 2022 WL 4111079 at *2 (S.D. Fla. Sep. 8, 2022) ("A plaintiff . . . may not plead tort claims under state law where a COGSA claim would be appropriate.").

U.S.C. § 80101." [ECF No. 1 ¶¶ 75, 83, 91, 98, 105, 112, 119]. The alleged statute, 46 U.S.C. § 80101, is not the Pomerene Act. Rather, 46 U.S.C. § 80101 governs vessels stranded on a foreign coast. On this basis alone, Counts VIII through XIV are inadequately pled and shall be dismissed.

Even if the Court looks to the language of the Pomerene Act set forth at **49** U.S.C. § 80101 et seq. (emphasis added), Plaintiff fails to state a claim. The Pomerene Act provides that a carrier is liable to a person having rights in good when the carrier delivers the goods to a person who is not lawfully entitled to them. 49 U.S.C. § 80111(a). *See also Polygram Group Distribution, Inc. v. Transus, Inc.*, 990 F. Supp. 1454 (N.D. Ga. 1997) (applying Pomerene Act to the mis-delivery of goods). Here, Plaintiff does not allege that Defendants delivered to Cargo to the wrong person. Indeed, the Complaint is devoid of allegations that the Cargo was improperly delivered to Laparkan Bond. Accordingly, Counts VIII through XIV, to the extent they attempt to raise claims under the Pomerene Act, shall be dismissed.[12]

## II.    Supplemental Jurisdiction over State Law Claims

As the Court has dismissed Plaintiff's federal claims, it must decide whether to continue to exercise supplemental jurisdiction over Plaintiff's state law claims for negligence and breach of bailment.[13]

Where a district court has original jurisdiction over an action, the court "shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a). However, a district court "may decline to

---

[12] Like Plaintiff's claims under COGSA, Plaintiff also fails to plead with any particularity how each Defendant would be liable under bills of lading issued only by LTC or LTLC.

[13] The Complaint alleges that this Court has federal question jurisdiction over Plaintiff's claims. It does not allege diversity jurisdiction. [ECF No. 1 ¶ 2]. Moreover, the Complaint does not allege the citizenship of all the parties. As a result, the Court cannot determine whether the parties are completely diverse.

exercise supplemental jurisdiction over a claim . . . [if] the district court has dismissed all claims over which it has original jurisdiction[.]" *Id.* § 1367(c)(3).

"The decision to exercise supplemental jurisdiction over pendant state claims rests within the discretion of the district court." *Raney v. Allstate Ins. Co.*, 370 F.3d 1086, 1088–89 (11th Cir. 2004) (per curiam) (citing *Mergens v. Dreyfoos*, 166 F.3d 1114, 1119 (11th Cir. 1999)); *see also West v. City of Albany*, 830 F. App'x 588, 596 (11th Cir. 2020) (per curiam) (noting that a "district court's decision to either retain or reject" supplemental jurisdiction over state law claims is "purely discretionary" and "not a jurisdictional matter." (citation omitted)). The Eleventh Circuit has "encouraged district courts to dismiss any remaining state claims when . . . the federal claims have been dismissed prior to trial." *Raney*, 370 F.3d at 1089. As announced in *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966), a district court should consider the factors of judicial economy, convenience, fairness, and comity before doing so. *West*, 830 F. App'x at 597 (citations omitted). The *Gibbs* factors "may, by their presence or absence, influence the court in its decision concerning the exercise of such discretion" to retain or reject supplemental jurisdiction. *Palmer v. Hosp. Auth. of Randolph Cnty.*, 22 F.3d 1559, 1569 (11th Cir. 1994).

After considering the § 1367(c) factors and the *Gibbs* factors, which weigh in favor of dismissal, the Court declines to continue exercising supplemental jurisdiction over the remaining state law claims.[14]

## CONCLUSION

Based on the foregoing, it is **ORDERED AND ADJUDGED** as follows:

1. Defendants' Motion to Dismiss Complaint, [ECF No. 29], is **GRANTED**.

2. The Complaint is dismissed without prejudice as Plaintiff fails to adequately allege its

---

[14] Because the Court is dismissing Plaintiff's federal claims and declining to exercise supplemental jurisdiction over Plaintiff's state law claims, it does not address Defendants' arguments regarding personal jurisdiction.

federal claims and the Court declines to exercise supplemental jurisdiction over Plaintiff's state law claims.

3. This action is **CLOSED** and all pending motions are **DENIED** as **MOOT**.

**DONE AND ORDERED** in Chambers at Miami, Florida, this 18th day of March, 2024.

_____
DARRIN P. GAYLES
UNITED STATES DISTRICT JUDGE